**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANIEL KEATING-TRAYNOR,
MAUREEN KEATING, and TERRENCE
TRAYNOR,

          Plaintiffs,

   v.

WESTSIDE CRISIS CENTER, et al.,

          Defendants.

                              /

No. C 05-04475 CRB

**MEMORANDUM AND ORDER**

     Plaintiffs, proceeding in pro se, filed this lawsuit against more than 50 separate defendants.  The lawsuit arises out of the six years plaintiff Daniel Keating-Traynor spent in the care of the San Francisco Department of Social Services.  After the Court denied plaintiffs' motion to proceed *in forma pauperis* on the ground that the complaint failed to state a federal claim, plaintiffs paid the filing fee and filed a First Amended Complaint.  Now pending before the Court are 10 separate motions to dismiss filed on behalf of the served defendants.

                **ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

     Plaintiffs filed this lawsuit on November 3, 2005--plaintiff Daniel Keating-Traynor's 20th birthday.  First Amended Complaint ("FAC") p. 4.; Plaintiffs' Exhibits in Opposition to Motion to Dismiss ("Plaintiffs' Exh."), Exh. 1.  He and his parents complain of defendants'

United States District Court

For the Northern District of California

1    treatment of Keating-Traynor, beginning when Keating-Traynor was nine through his 15th

2    birthday.  Id.

3         The conduct began in October 1993, when Keating-Traynor's mother, Maureen

4    Keating ("Keating"), sought assistance from the West Side Crisis Clinic for Keating-Traynor.

5    Id. at p. 5.  Keating-Traynor was subsequently placed in a foster home shelter and then

6    returned home.  Id. at 7.

7         Plaintiffs allege that 99 percent of the conduct of which they complain is the

8    responsibility of Deborah Goldstein, the San Francisco Department of Social Services

9    ("DSS") social worker responsible for Keating-Traynor from the summer of 1994 through

10   1999.  Id. at 3, 8.  They contend that in retaliation for plaintiffs' complaints and Keating-

11   Traynor's refusal to attend school, Keating-Traynor was placed at McAuley Neuropsychiatric

12   Institute for evaluation.  A second McAuley hospitalization occurred in August 1994.  Id. at

13   8.  Plaintiffs appear to claim that the hospitalizations were involuntary, and that Goldstein

14   engineered the placement by not being truthful with the juvenile court.

15        DSS subsequently placed Keating-Traynor into residential treatment.  Plaintiffs allege

16   that DSS authorizes such "high level placements" without reviewing any information other

17   than that provided by the social worker.  Id.  at 9.  They claim further that the placements

18   were made without notice and an opportunity to be heard, "despite repeated complaints" by

19   plaintiffs.  Id. at 10.

20        In September 1994, Keating-Traynor was sent to the Edgewood Children's Center for

21   evaluation and he stayed there for eleven months.  Id. at 11.  Plaintiffs allege that in

22   retaliation for plaintiff Keating's complaints, Keating's visits with her son were restricted.

23   Id.

24        Although not clear, it appears that in 1995 Keating-Traynor was sent to Alaska to live

25   with his guardians, the Sheltons.  At some point he was placed in a residential program in

26   Alaska, where plaintiff Terrence Traynor resides.  Plaintiffs allege that Keating-Traynor was

27   not properly cared for while in Alaska.  Id. at 12.

28

1    In June 1998, at Goldstein's initiation, Keating-Traynor was transferred to St.

2 Vincent's in Marin County, California.  Keating-Traynor's visitation rights were restricted.

3 Id. at 14.

4    Throughout these years Keating-Traynor was forcibly medicated against his will.  Id.

5 at 15.

6    Plaintiffs also appear to complain of child support proceedings, that is, proceedings to

7 recover monies from Keating-Traynor's parents for Keating-Traynor's support.  Id. at 16.

8 They allege that plaintiff Traynor "although having overpaid his support obligation, was

9 subject to multiple enforcement actions including tax intercepts."  Id. at 16.  "Plaintiff

10 Keating is currently subject to a garnishment of $200 a month from her Social Security

11 Disability checks."  Id.  She claims the San Francisco DSS has failed to account for such

12 monies.

13    Plaintiffs make claims under 42 U.S.C. section 1983 and 1985 for violation of their

14 first, fourth, fifth, eighth and fourteenth amendment rights.  They also make a claim under

15 the Alien Tort Claims Act, alleging the torts of perjury, defamation, false imprisonment,

16 conspiracy, assault and battery, medical experimentation, and failure to protect.  They make a

17 "conversion/denial of equal protection of the law" claim, as well as claims for invasion of

18 privacy, illegal traffic in children, negligent and intentional infliction of emotional distress,

19 and a complaint for violation of the "Universal Declaration For Human Rights" and violation

20 of the United Nations Convention On the Rights of The Child.

**PROCEDURAL HISTORY**

22    On November 3, 2005, plaintiffs filed this action and an application to proceed *in*

23 *forma pauperis*.  The Court denied the application on the ground that plaintiffs' complaint,

24 which named more than 50 defendants, failed to state a claim.  Plaintiffs responded by

25 paying the filing fee and filing a First Amended Complaint which attempts to set forth

26 plaintiffs' claims in greater detail.

27    The Court held a case management conference on March 31, 2006 and ordered

28 plaintiffs to serve all defendants by April 28, 2006.  The Court also set June 16 as the date to

United States District Court

For the Northern District of California

3

1  hear all defendants' motions to dismiss.  Defendants filed ten motions to dismiss.  One week

2  after plaintiffs' opposition to the motions was due, plaintiffs sought leave to file a late

3  opposition.  Over the objection of defendants the Court allowed plaintiffs to file their

4  untimely opposition.  Their opposition includes a detailed affidavit from Keating-Traynor, as

5  well as more than 32 exhibits.

6       Defendants move to dismiss plaintiffs' claims on various grounds, including lack of

7  personal jurisdiction, statute of limitations, standing, and failure to state a claim.

8  .                                    **DISCUSSION**

9  **I.       Motion to dismiss for lack of personal jurisdiction**

10       Plaintiffs' claims against defendants Providence Health System-Washington, also

11  known as Providence Alaska Medical Center ("Providence") and Dr. Matsutani arise out of

12  treatment Providence and Dr. Matustani provided to Keating-Traynor while Keating-Traynor

13  resided in Alaska.  In 1995, DSS had Keating-Traynor placed with guardians in Alaska.

14  Keating-Traynor Affidavit at 4 and Exh. 10.  In October 1997, the guardians had Keating-

15  Traynor admitted to Providence.  Id. at 6 and Exh. 19.  Keating-Traynor's claims against

16  Alaska resident Ann Larabee arise from her employment with Alaska Children's Services in

17  Alaska.  Keating-Traynor's guardians requested that Keating-Traynor be placed with

18  Children's Services in 1996.  The Court will refer to all of these defendants collectively as

19  the "Alaska defendants."

20       All of the Alaska defendants move to dismiss the claims against them on the ground

21  that this Court does not have personal jurisdiction of them.  Plaintiffs bear the burden of

22  establishing personal jurisdiction over a defendant in federal court.  Doe v. Unocal Corp.,

23  248 F.3d 915, 922 (9th Cir. 2001).  Where, as here, the Court rules on the motion on the basis

24  of only affidavits, plaintiffs need only make a prima facie showing of personal jurisdiction to

25  defeat the motion.  See Ballard v. Savage, 65 F.3d 1495 (9th Cir. 1995).  In determining

26  whether a plaintiff has satisfied this burden, the plaintiff's version of the facts are taken as

27  true when not directly controverted, and conflicts in the allegations contained in the parties'

28  affidavits are also resolved in plaintiff's favor.  Unocal Corp., 248 F.3d at 922 (citing AT &

*United States District Court*
*For the Northern District of California*

1  T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.1996)).  However,

2  conclusory statements are not enough to satisfy a prima facie showing of jurisdiction without

3  supporting evidence contained in the record.  GTE New Media Servs. Inc. v. BellSouth

4  Corp., 199 F.3d 1343, 1349 (D.D.C. 2000).

5      A court may exercise personal jurisdiction over a defendant consistent with due process

6  only if he or she has "certain minimum contacts" with the relevant forum "such that the

7  maintenance of the suit does not offend 'traditional notions of fair play and substantial

8  justice.' "  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemeitisme, 433 F.3d 1199,

9  1205 (9th Cir. 2006) (internal citations omitted).  "Unless a defendant's contacts with a forum

10 are so substantial, continuous, and systematic that the defendant can be deemed to be

11 "present" in that forum for all purposes, a forum may exercise only "specific" jurisdiction-that

12 is, jurisdiction based on the relationship between the defendant's forum contacts and the

13 plaintiff's claim."

14     None of the Alaska defendants have substantial, continuous, and systematic contacts

15 with California.  While Providence's parent corporation does business in California, the

16 Providence defendant here is separately incorporated and has very little contact with

17 California.  A parent's contacts with a forum may be sufficient to establish personal

18 jurisdiction of a subsidiary only if the parent is the alter ego of the subsidiary.  AT&T v.

19 Compagnie Bruxelles Lambert, 94 F.3d 586, 590 (9th Cir. 1996).  Plaintiffs do not, and

20 cannot, make any alter ego allegations here and thus have failed to establish general

21 jurisdiction of Providence.  See id.  Accordingly, plaintiffs must prove that the Court has

22 specific jurisdiction of defendants.

23     Federal courts apply the following three-part test to determine whether a nonresident

24 defendant has the minimum contacts needed to support specific jurisdiction: (1) The

25 nonresident defendant must purposefully direct his activities or consummate some transaction

26 with the forum or resident thereof; or perform some act by which he purposefully avails

27 himself of the privilege of conducting activities in the forum, thereby invoking the benefits

28 and protections of its laws; (2) the claim must be one which arises out of or relates to the

United States District Court

For the Northern District of California

5

**United States District Court**
For the Northern District of California

1   defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with

2   fair play and substantial justice, i.e. it must be reasonable.  Core-Vent Corp. v. Nobel Indus.

3   AB, 11 F.3d 1482, 1485 (9th Cir. 1993).

4        Plaintiffs have not met their burden of proving specific jurisdiction.  None of the

5   Alaska defendants purposefully availed themselves of conducting activities in California;

6   indeed, none conducted any activities in California. These defendants provided services to

7   Keating-Traynor while he was residing in Alaska at the request of his Alaska guardians.   That

8   the San Francisco DSS paid for the Alaska defendants' services, and that defendants may

9   have mailed reports to California, are insufficient to confer personal jurisdiction.  See Harlow

10  v. Children's Hospital, 432 F.3d 50 (1st Cir. 2006) .  Accordingly, the Alaska defendants'

11  motions to dismiss for lack of personal jurisdiction must be granted.

12  **II.    Federal Civil Rights Claims**

13       As the issues are different, the Court will address the civil rights claims of Keating-

14  Traynor separately from his parents.

15       **A.    Statute of limitations**

16       Defendants argue that plaintiffs' section 1983 and 1985 claims are barred by the statute

17  of limitations.

18            **1.    The parents**

19       Keating's and Traynor's section 1983 and 1985 claims are barred by the statute of

20  limitations to the extent they arise out of conduct that occurred prior to November 2003.  The

21  statute of limitations for section 1983 and section 1985 claims is California's statute of

22  limitations for personal injury claims.  See Stanley v. Trustees of Cal. State Univ., 433 F.3d

23  1129, 1134 (9th Cir. 1983).  California's limitation period is currently two years, see Cal.

24  Code Civ. P. 335.1; Stanley, 433 F.3d at 1136, and was one year at the time Keating's and

25  Traynor's claims accrued.  Cal. Code Civ. P. 340(3);  Stanley, 433 F.3d at 1136.  As the last

26  conduct alleged in complaint occurred more than two years before this lawsuit was filed, see

27  Plaintiffs' Opposition at 2 (Affidavit of Daniel Keating-Traynor), Keating's and Traynor's

28

**United States District Court**
For the Northern District of California

1  section 1983 and section 1985 claims are barred by the statute of limitations and must be

2  dismissed.

3     The parents' contention that they are entitled to equitable tolling because they feared

4  Keating-Traynor would be removed from their home again if they filed suit is not supported

5  by citation to any law, and the Court is aware of no case or statute that supports equitable

6  tolling under such circumstances.  Accordingly, Keating's and Traynor's section 1983 and

7  1985 claims must be dismissed with prejudice.

8     The Court notes that the FAC vaguely includes ongoing "equal protection" allegations

9  regarding child support payments paid by Keating and Traynor not having been given to

10  Keating-Traynor.  Such claim, if any, belongs to Keating-Traynor, not his parents.

11                    **2.    Keating-Traynor**

12     Keating-Traynor's civil rights claims were tolled until he turned 18.  See Cal. Code

13  Civ. P. § 352(a).  At the time his claims arose the statute of limitations was one year.  See

14  Stanley, 433 F.3d at 1136.  While his claims were still tolled, however, and before he turned

15  18, the statute was extended to two years.  Id.  Keating-Traynor filed his lawsuit exactly two

16  years after his claims were no longer tolled.  The dispositive question, then, is which statute of

17  limitations applies.

18     "A new statute that enlarges a statutory limitations period applies to actions that are not

19  already barred by the original limitations period at the time the new statute goes into effect."

20  Andonagui v. May Dept. Stores Co., 128 Cal.App.4th 435, 440 (2005) (citing Douglas

21  Aircraft Co. v. Cranston, 58 Cal.2d 462, 465 (1962));  see also Mojica v. 4311 Wilshire, LLC,

22  131 Cal.App.4th 1069, 1073 (2005) (holding that new two-year statute of limitations applied

23  to claims that were equitably tolled when new statute became effective).  On the day the two-

24  year statute of limitations became effective Keating-Traynor's claims were not time-barred as

25  they were still tolled due to his age; accordingly, the two year statute applies to his civil rights

26  claims and they are not untimely.

27     Defendants' reliance on Krupnick v. Duke Energy Morro Bay, 115 Cal.App.4th 1026,

28  1028-29 (2004) is misplaced.  Krupnick merely held that the new two-year statute of

1  limitations does not apply retroactively to revive lapsed claims.  Keating-Traynor's civil rights

2  claims had not lapsed when the new limitations period became effective.

3  **B.      Failure to state a claim**

4  **1.      Section 1985**

5  Keating-Traynor purports to make claims against certain defendants pursuant to 42

6  U.S.C. section 1985.  FAC at ¶. 17-18.  In his opposition, he appears to contend that he is

7  making claims pursuant to section 1985(2) and 1985(3).   Keating-Traynor has not stated a

8  section 1985 claim.

9  The relevant portion of section 1985(2) and section 1985(3) require an allegation of

10  race-based animus.  See Bagley v. CMC Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991).

11  The FAC does not and cannot include such an allegation.  Courts "have extended section

12  1985(3) to protect non-racial groups only if "the courts have designated the class in question a

13  suspect or quasi-suspect classification requiring more exacting scrutiny or . . .  Congress has

14  indicated through legislation that the class require[s] special protection."  Holgate v. Baldwin,

15  425 F.3d 671, 676 (9th Cir. 2005) (internal quotation marks and citations omitted).   Although

16  the FAC does not allege that Keating-Traynor is a member of a suspect class, in his opposition

17  he contends that he belongs to a protected class of mentally disabled persons.  Even assuming,

18  however, that mentally disabled persons qualify as suspect class, Keating-Traynor has failed

19  to allege that defendants' conduct was motivated by such class-based animus.  This omission

20  is unsurprising as there is nothing in Keating-Traynor's detailed affidavit that suggests such

21  animus.

22  Moreover, Keating-Traynor's section 1985(3) claim also fails because he does not

23  allege any evidence of a conspiracy or an act in furtherance of the conspiracy.  See Holgate,

24  425 F.3d at 676.  "A mere allegation of conspiracy without factual specificity is insufficient."

25  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988).  The FAC

26  barely even includes an allegation of a conspiracy, let alone the factual specificity required.

27  Accordingly, Keating-Traynor's section 1985 claim is dismissed.  The dismissal is without

28  leave to amend.  Keating-Traynor has filed two complaints and his opposition includes a

**United States District Court**

For the Northern District of California

8

detailed, nine-page "affidavit," and yet he has not come close to making a valid section 1985 claim.  Granting leave to amend would therefore be futile or would simply encourage plaintiff to make allegations which he does not have a good faith basis for making.

### 2.      Section 1983

#### a.      Immunity

The Marin County Office of Education (sued as the "Marin School District") is state agency and is therefore immune from suit in federal court under the Eleventh Amendment to the United States Constitution.  See Belanger v. Madera Unified School Dist., 963 F.2d 248, 254 (9th Cir. 1992).

#### b.      State action

Defendants Catholic Healthcare West, Dora Miranda, Beaupied, Fitzsimmons, Catholic Charities, Kent Eagleson and Edgewood Children's Center move to dismiss Keating-Traynor's section 1983 claims against them on the ground that they are not "state actors." Section 1983 provides a cause of action against government actors; it does not apply to "merely private conduct, however discriminatory or wrongful." Blum v. Yaretsky, 457 U.S. 991, 1002 (1981).  The above defendants are indisputably private, not governmental, actors. That some of them may have accepted payment from the government for their services, or may even have been performing a government contract, is insufficient to convert them into governmental actors.  See Rendell-Baker v. Kohn, 457 U.S. 830, 840-42 (1982);  Blum, 457 U.S. at 1011.

Keating-Traynor's conclusory assertion of a conspiracy is also inadequate.  Vague and conclusory allegations are not sufficient to support a claim for civil rights violations based on conspiracy, even when the plaintiff is proceeding pro se.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (a "liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled").  The FAC and plaintiff's opposition are devoid of any specific factual allegations showing an agreement between any of these parties and a state actor to violate Keating-Traynor's civil rights.  This omission is

*United States District Court*

*For the Northern District of California*

1  unsurprising in light of the FAC's assertion that social worker Goldstein is 99 percent

2  responsible for the allegedly unconstitutional conduct.  Accordingly, Keating-Traynor's

3  section 1983 claim against these private parties must be dismissed.

4  **III.    Alien Tort Act Claims**

5         Plaintiffs also purport to make a claim against defendants under the Aliens' Tort Claim

6  Act.  To state a claim under the Act, plaintiffs must allege (1) that they are aliens, (2)

7  defendants committed a tort against them, and (3) the torts were committed in violation of the

8  law of nations or a treaty of the United States.  28 U.S.C. § 1350.

9         Traynor's and Traynor-Keating's claims fail because they are not aliens.  First

10  Amended Complaint at p. 3.  Their dual citizenship is immaterial; they are citizens of the

11  United States and therefore not aliens.  See Chavez v. Carranza, 407 F.Supp.2d 925, 930

12  (W.D. Tenn. 2004) (stating that the Alien Tort Claims Act "creates jurisdiction in the United

13  States courts only for non-citizen plaintiffs who sue a defendant in tort for a violation of

14  international law");  Miner v. Begum, 8 F.Supp.2d 643, 644 (S.D. Tex. 1998) (holding that

15  district court does not have jurisdiction of ATCA claims brought by United States citizen).

16         Keating is not a citizen of the United States and thus qualifies as an "alien."  While she

17  alleges that defendants committed numerous torts, she does not state a ATCA claim.  She

18  must allege that defendants committed a tort "in violation of the laws of nations or a treaty of

19  the United States."  She does not allege defendants violated a United States treaty.  And the

20  Supreme Court recently clarified--and narrowed--what is encompassed by the "law of

21  nations." Whether an alleged tort violates the "law of nations," "must be gauged against the

22  current state of internationl law, looking to those sources [courts] have long, albeit cautiously,

23  recognized."  Sosa v. Alvarez-Machain, 542 U.S. 692, 732 (2004). " [W]here there is no

24  treaty, and no controlling executive or legislative act or judicial decision, resort must be had to

25  the customs and usages of civilzed nations; and, as evidence of these, to the works of jurists

26  and commenators, who by years of labor, research and experience, have made themselves

27  pecuilarly well acquainted with the subjects of which they treat.  Such works are resorted to

28  by judicial tribunals, not for the speculations of their authors concerning what the law ought to

10

**United States District Court**

For the Northern District of California

1    be, but for trustworthy evidence of what the law really is." Id. (internal quotation marks and

2    citation omitted).

3          Plaintiff Keating's opposition does not identify any torts committed against her, let

4    alone torts that meet the Supreme Court's test set out in Sosa.  Her opposition focuses on what

5    defendants allegedly did to Keating-Traynor.  While, liberally read, her complaint may allege

6    some tort against her, she has not demonstrated that any has the potential to rise to the level of

7    a violation of international law.  Accordingly, her ATCA claim must be dismissed.

8          Moreover, the statute of limitations for ATCA claims is ten years.  Thus, all of

9    Keating's claims based on conduct that occurred before November 3, 1995 are time barred.

10   These time-barred claims include those made against McAuley Institute (Catholic Healthcare

11   West).

12   **IV.     United Nations Convention**

13         Plaintiffs appear to make a claim pursuant to the United Nations' Convention on the

14   Rights of the Child.  The Convention does not convey a private right of action to plaintiffs as

15   a matter of law.  See Flores v. Southern Peru Copper Corp., 414 F.3d 233, 257, 259 (2d Cir.

16   2003).

17                                    **CONCLUSION**

18         For the foregoing reasons defendants' motions to dismiss are granted as follows:

19   1.     Plaintiffs' claims against defendants Providence Health, Matsutani, and Larabee are

20   DISMISSED for lack of personal jurisdiction.

21   2.     Traynor's and Keating's section 1983 and section 1985 claims against all defendants

22   are DISMISSED on the ground that they are barred by the statute of limitations;

23   3.     Keating-Traynor's section 1985 claims against all defendants are DISMISSED on the

24   ground that plaintiff does not state a claim as a matter of law;

25   4.     Keating-Traynor's section 1983 claims against defendants Catholic Heathcare West,

26   Fitzsimmons, Beaupied, Catholic Charities CYO, Eagleson, Edgewood and Miranda are

27   dismissed on the ground that these defendants are not state actors and therefore Keating-

28   Traynor has failed to state a claim against them;

11

**United States District Court**

For the Northern District of California

1   5.      Keating-Traynor's section 1983 claim against the Marin County Office of Education

2   (sued as the Marin School District) is DISMISSED on the ground of Eleventh Amendment

3   immunity;

4   6.      Plaintiffs' claim under the United Nations Convention is DISMISSED for failure to

5   state a claim;

6   7.      Traynor's and Keating-Traynor's ATCA claims against all defendants are DISMISSED

7   on the ground that plaintiffs are not aliens;

8   8.      Keating's ATCA claims against all defendants are DISMISSED on the ground that

9   Keating does not allege that any defendant committed a tort in violation of the "laws of

10  nations;"

11  9.      The above dismissals are without leave to amend.  Plaintiffs have filed a complaint, an

12  amended complaint, and an opposition that includes a detailed nine page affidavit from

13  Keating-Traynor, all of which the Court has considered in determining whether plaintiffs state

14  a claim; therefore, granting leave to amend would be futile.

15  10.     Plaintiffs' claims against all unserved defendants are DISMISSED without prejudice

16  pursuant to Federal Rule of Civil Procedure 4(m).

17  11.     The only claims remaining in this action are Keating-Traynor's section 1983 claims

18  against the San Francisco defendants.   These defendants' motion for a more definite

19  statement is GRANTED.  Within 30 days of the date of this Order, Keating-Traynor shall file

20  a Second Amended Complaint--against these defendants only--which more clearly sets forth

21  the basis for his section 1983 claim against these defendants.

22  12.     At oral argument plaintiffs indicated that they want to add state law claims and

23  potentially others to their complaint, and in their opposition they refer to claims that are not in

24  the First Amended Complaint.  Any request for leave to amend shall be made by noticed

25  motion in accordance with Civil Local Rule 7-2, and shall be accompanied by a proposed

26  //

27  //

28  //

amended complaint.  Such motion, if any, shall be filed within 30 days of the date of this Order.

      **IT IS SO ORDERED.**


Dated: June 16, 2006

                                          CHARLES  R. BREYER
                                          UNITED STATES DISTRICT JUDGE

**United States District Court**

For the Northern District of California